UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, et al.,

    Debtors,

_____/

Case No.: 6:07-bk-00761-ABB
Chapter 11
Jointly Administered

SONEET R. KAPILA, as CHAPTER 11
TRUSTEE for LOUIS J. PEARLMAN
ENTERPRISES, INC.,

    Plaintiff,

v.

Adv. P. No. 6:09-ap-_____

SAM LICATA AND SYBIL HALL,

    Defendants.

_____/

## COMPLAINT TO AVOID AND RECOVER
## FRAUDULENT TRANSFERS AND FOR OTHER RELIEF

Plaintiff, Soneet R. Kapila, as the Chapter 11 Trustee ("Trustee" and/or "Plaintiff") for the bankruptcy estate of Louis J. Pearlman Enterprises, Inc. ("LJPE: or "Debtor") by and through his undersigned counsel, files his Complaint to Avoid and Recover Fraudulent Transfers and for Other Relief against Sam Licata ("Licata") and Sybil Hall ("Hall") (collectively, the "Defendants"), and alleges as follows:

### NATURE OF ACTION

1.    This is an adversary proceeding seeking to avoid and recover actual fraudulent transfers made to Defendants pursuant to Sections 544, 548 and 550 of the Bankruptcy Code, Chapter 726, Florida Statutes, and Fed. R. Bankr. P. 7001.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.

3.  Venue is proper pursuant to 28 U.S.C. § 1409.

4.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).

## THE PARTIES

5.  Plaintiff is the court-appointed Chapter 11 Trustee for the bankruptcy estate of LJPE.

6.  Defendant Licata is an individual who is subject to this Court's jurisdiction. At all material times hereto, Licata was a resident of Orange County, Florida.

7.  Defendant Hall is an individual who is subject to this Court's jurisdiction. At all material times hereto, Hall was a resident of Orange County, Florida.

8.  Defendants improperly received funds and property traceable to LJPE and the Trustee seeks, *inter alia*, to avoid and recover these transfers under the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.* ("FUFTA").

## FACTUAL BACKGROUND

9.  On March 1, 2007 (the "Petition Date"), Tatonka Capital Corporation, Integra Bank, National Association, American Bank of St. Paul, and First National Bank & Trust Company of Williston (collectively, the "Petitioning Creditors") filed against LJPE an involuntary petition under Chapter 11 of the Bankruptcy Code.

10. On March 8, 2007, the Petitioning Creditors filed an emergency motion for appointment of a Chapter 11 trustee (Dkt. No. 5; the "Emergency Motion"). As set forth in the

Emergency Motion, upon information and belief, Trans Continental Airlines, Inc. ("TCA") and LJPE have been involved in one of the largest "Ponzi" schemes in the State of Florida based on fraudulent investments offered in connection with TCA, among other things.

11. On March 16, 2007, this Court entered its Order Directing the Appointment of Chapter 11 Trustee (Dkt. No. 24).

12. On March 27, 2007, the United States Trustee filed its Notice of Appointment of Trustee (Dkt. No. 28), appointing Plaintiff as the Chapter 11 Trustee for TCA.

13. On March 30, 2007, this Court entered its Order Approving the Chapter 11 Trustee's appointment (Dkt. No. 31).

14. On April 5, 2007, this Court entered its Order for Relief for TCA (Dkt. No. 39; the "Order for Relief").

15. On April 18, 2007, LJPE filed a voluntary petition under Chapter 11 of the Bankruptcy Code in Case No. 6:07-bk-01505-ABB (the "LJPE Petition Date") (together with the Pearlman Petition Date, as applicable, the "Petition Date"). Thereafter, on motion for the appointment of a trustee filed by the Office of the United States Trustee, the Court, on May 8, 2007, entered an Order Directing the Appointment of a Chapter 11 Trustee (LJPE Dkt. No. 12). On May 25, 2007, the Court entered an order approving the selection of Soneet R. Kapila as the Chapter 11 trustee for LJPE (LJPE Dkt. No. 17).

16. On July 31, 2007, this Court entered its Order pursuant to which the Pearlman bankruptcy case, the LJPE bankruptcy case and the bankruptcy cases of the other Debtors were jointly administered with the Pearlman bankruptcy case designated as the lead case (Pearlman Dkt. No. 228; LJPE Dkt. No. 55).

## THE EISA PROGRAM SCHEME

17.     From as early as 1989 through January 2007, TCA, by and through its president, Louis J. Pearlman ("Pearlman"), and other control persons of TCA, raised in excess of $300 million from hundreds of investors nationwide. TCA, through Pearlman, and others, raised such funds by offering investors the "opportunity" to invest their funds into the "Employee Investment Savings Account" program allegedly maintained by TCA (the "EISA Program").

18.     Upon information and belief, the EISA Program was touted by Pearlman and others as being available solely to employees of TCA and their family and friends. However, upon information and belief, the investors solicited by Pearlman and others were not, with a few exceptions, employees or family members of employees of TCA.

19.     Upon information and belief, Pearlman and others promised prospective and existing investors in the EISA Program that their investments would yield above-market interest rates because such monies were being invested through TCA, which was promoted as a financially strong and successful charter airline with a net worth of over $100 million. Upon information and belief, Pearlman and others represented to existing and prospective investors in the EISA Program that TCA had significant banking relationships which enabled TCA to achieve these higher than market rates of return on its investments, which higher rates of return could be passed on to the investors.

20.     Upon information and belief, Pearlman and others made several representations to investors and prospective investors in the EISA Program concerning the safety of the investments, including without limitation, that the funds (i) were secure and deposited in individual bank accounts with unique account numbers at United States financial institutions, (ii)

were insured by the Federal Deposit Insurance Corporation, (iii) were re-insured by either Lloyds of London or AIG Insurance.

21. In actuality, the funds were not deposited into individual bank accounts for the investors with individual account numbers. Moreover, the funds did not have FDIC insurance protection, and there was no re-insurance from Lloyds of London, AIG Insurance or any other insurance company.

22. Rather, the funds received from investors in the EISA Program were deposited into various checking accounts held in the name of TCA and thereafter disbursed to various parties, including certain payments to or for the benefit of the Defendant, as opposed to remaining on deposit for such investors.

23. Upon information and belief, certain of the funds transferred by investors into the EISA Program were used to repay prior investors and/or pay interest to prior investors in the EISA Program.

24. Upon information and belief, at all relevant times herein, Pearlman and others knew that the representations being made to the investors in the EISA Program concerning such investments were false and misleading and were intended to induce such investors into transferring their monies to TCA.

## THE BANK FRAUD SCHEME

25. From as early as 2003 through January 2007, Pearlman, both individually and through various entities owned and/or controlled by Pearlman, borrowed in excess of $150 million in both secured and unsecured loans (collectively, the "Loans") from numerous banks and financial institutions nationwide, including the Petitioning Creditors, HSBC Bank, Bank of America and First International Bank and Trust (collectively, the "Banks").

26.  Upon information and belief, Pearlman created and circulated, including through and with the substantial assistance of others, offering memorandum and similar due diligence materials to one or more of the Banks in an effort to convince the Banks to make the Loans.

27.  The due diligence materials that were prepared and delivered to the Banks in support of the applications for the Loans included, without limitation, financial statements for TCA and other of Pearlman's companies, financial statements of Pearlman individually, and audited financial statements and related reports from the auditing firm of Cohen & Siegel. Among other things, the financial statements for both TCA and Pearlman listed substantial assets and a corresponding substantial net worth for each of TCA and Pearlman.

28.  In fact, all or substantially all of the due diligence materials prepared and delivered to the Banks in support of the applications for the Loans were false and misleading. Among other things, neither TCA nor Pearlman actually had the substantial assets or net worth evidenced on such financial statements. Moreover, the auditing firm of Cohen & Siegel was a fiction. It simply did not exist.

29.  At all relevant times hereunder, Pearlman and others knew or should have known of the false and fictitious nature of the financial and other information being provided to the Banks in support of the Loans, and that such information was intended to induce one or more of the Banks into making the Loans to Pearlman and his companies.

**TRANSFERS TO OR FOR THE BENEFIT OF THE DEFENDANTS**

30.  In 2002, a dispute arose between the Defendants, Louis J. Pearlman ("Pearlman"), Backstreet Boys, Inc., Backstreet Management, Inc., Trans-Action, L.C., Transcontinental Media, Inc. and Trans Continental Records, Inc. (collectively referred to as "Pearlman Defendants").

31. As a result of this dispute, Licata and Hall filed separate lawsuits in the Circuit Court of Orange County, Florida, against the Pearlman Defendants (the "Litigation").

32. LJPE was not a Defendant in the Litigation nor did the Defendants make any claims against LJPE.

33. On the eve of trial in April 2006, the Defendants and Pearlman Defendants entered into two settlement agreements which required the Pearlman Defendants to make certain payments to the Defendants (the "Settlement Agreements"). LJPE was not obligated to make any payments to the Defendants under the Settlement Agreements.

34. On April 17, 2006, LJPE transferred to Foley & Lardner $400,000.00, which was then transferred to the Defendants as partial payment under the Settlement Agreement. Foley & Lardner was merely acting as a conduit for the transfer of monies to the Defendants.

35. On June 15, 2006, LJPE transferred to Foley & Lardner $675,000.00, which was then transferred to the Defendants as payment under the Settlement Agreement. Foley & Lardner were merely acting as a conduit for the transfer of monies to the Defendants. The April 17, 2006 transfer of $400,000.00 to the Defendants and June 16, 2006 transfer of $675,000.00 to the Defendants shall be referred to as the "Two Year Transfers".

36. LJPE did not receive any direct or indirect benefit for the Two Year Transfers. Since the Defendants failed to provide anything to LJPE in exchange for the Two Year Transfers, they lacked good faith and provided no value to LJPE.

37. LJPE was not indebted, directly or indirectly, through a guaranty or otherwise, to the Defendants for any debt.

## COUNT I
## CONSTRUCTIVE FRAUD – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS RECEIVED BY DEFENDANTS UNDER 11 U.S.C. §§ 548(a)(1)(B) AND 550

38. Paragraphs 1 through 37 inclusive are realleged and incorporated herein by reference.

39. This is an action to recover fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550.

40. Within two years prior to the Petition Date, LJPE transferred the Two Year Transfers to or for the benefit of the Defendants.

41. LJPE received nothing in exchange for transferring the Two Year Transfers to the Defendants and, as such, the Defendants failed to act in good faith.

42. At the time of the Two Year Transfers, LJPE was insolvent or became insolvent as a result thereof, and remained insolvent continuously thereafter.

43. At the time of the Two Year Transfers, LJPE was engaged or was about to engage in business or a transaction for which the remaining property of LJPE constituted an unreasonably small amount of capital.

44. At the time of the Two Year Transfers, LJPE intended to incur, or believed or reasonably should have believed, that it would incur debts that would be beyond its ability to pay as they matured.

45. The Two Year Transfers are avoidable under 11 U.S.C. § 548(a)(1)(B).

46. Pursuant to 11 U.S.C. § 550(a), the recovery of property for the benefit of the estate of LJPE is authorized to the extent that the Two Year Transfers are avoided under 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, the Trustee demands judgment against the Defendants as follows: (i) determining that the Two Year Transfers are fraudulent and avoidable under 11 U.S.C. § 548(a)(1)(B); (ii) avoiding the Two Year Transfers and entering judgment in favor of the Trustee against Defendants for the value of the Two Year Transfers, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit; (iii) disallowing any claim that Defendants may have against LJPE or any jointly administered Debtor with LJPE, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (iv) for such other and further relief as the Court deems just and proper.

## COUNT II
## CONSTRUCTIVE FRAUD – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS RECEIVED BY DEFENDANTS UNDER 11 U.S.C. §§ 544(b)(1) AND 550 AND FLA. STAT. §§ 726.105(1)(b), 726.106(1), AND 726.108

47. Paragraphs 1 through 37 inclusive are realleged and incorporated herein by reference.

48. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and FUFTA.

49. Within four years prior to the applicable Petition Date, LJPE transferred the Two Year Transfers to or for the benefit of the Defendants.

50. LJPE received nothing in exchange for the Two Year Transfers and, as such, the Defendants failed to act in good faith.

51. At the time of the Two Year Transfers, LJPE was insolvent and remained insolvent continuously thereafter.

52. At the time of the Two Year Transfers, LJPE was engaged in a business or transaction for which its remaining property constituted an unreasonably small amount of capital in relation to its business or transaction.

53. At the time of the Two Year Transfers, LJPE intended to incur, or believed or reasonably should have believed it would incur, debts that would be beyond its ability to pay as they became due.

54. There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. §502, who would have standing to assert a claim for relief under FUFTA.

55. The Two Year Transfers are avoidable under Fla. Stat. §§726.105(1)(b), 726.106(1), and 726.108(1)(a), and 11 U.S.C. §544(b)(1).

56. Pursuant to 11 U.S.C. §550(a), the recovery of property for the benefit of the estate of LJPE is authorized to the extent the Two Year Transfers are avoided under 11 U.S.C. §544(b)(1) and FUFTA.

**WHEREFORE,** the Trustee demands judgment against the Defendants as follows: (i) determining that the Two Year Transfers are fraudulent and avoidable under 11 U.S.C. §§ 544(b), and avoiding the Two Year Transfers; (ii) entering judgment in favor of the Trustee against Defendants for the amount of the Two Year Transfers, pursuant to Section 550 of the Bankruptcy Code, plus pre-judgment interest from the date of the transfers, post-judgment interest, and costs of suit; (iii) disallowing any claim that Defendants may have against LJPE or any jointly administered Debtor with LJPE, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (iv) for such other and further relief as the Court deems just and proper.

### COUNT III
### UNJUST ENRICHMENT

57. Paragraphs 1 through 37 inclusive are realleged and incorporated herein by reference.

58. This is an action for unjust enrichment.

59. LJPE conferred a benefit on the Defendants by making the Two Year Transfers.

60. The Defendants knowingly and voluntarily accepted and retained the benefit conferred by LJPE.

61. The circumstances are such that it would be inequitable and unjust for the Defendants to retain the benefit conferred by LJPE without paying the Trustee the value thereof.

62. The Defendants have been unjustly enriched at the expense of LJPE's estate.

63. The Trustee is entitled to the return of those amounts in which the Defendants were unjustly enriched through disgorgement or any other appropriate remedy.

**WHEREFORE,** the Trustee demands judgment against the Defendants in the amount of the Two Year Transfers together with interest and costs, and for such further relief as the Court may deem just and proper.

Dated: April 3, 2009

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Special Counsel for the Trustee
100 S.E. Second Street, Suite 3600
Miami, Florida 33131
Tel. (305) 349-2300
Fax. (305) 349-2310


By:   /s/Gregory M. Garno
Paul J. Battista, Esq.
Florida Bar No. 884162
pbattista@gjb-law.com
Gregory M. Garno, Esq.
Florida Bar No. 087505
ggarno@gjb-law.com
Brigette McGrath, Esq.
Florida Bar No. 030885
bmcgrath@gjb-law.com

8494-031 #239